**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**


| | |
|---|---|
| SEAN E. POSEY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )  Case No. 1:16-cv-02425-WTL-MJD |
| | ) |
| KEITH  BUTTS in his official capacity, | ) |
| | ) |
| Respondent. | ) |


**Entry Granting Petition for Writ of Habeas Corpus**

Presently before the Court is Petitioner Sean E. Posey's petition for a writ of habeas corpus

challenging a prison disciplinary proceeding identified as No. NCF 16-04-0050. That proceeding

resulted in the loss of 180 days of earned credit time, and a demotion in credit class.  Mr. Posey

raises eight claims in his habeas petition, two of which are dispositive.  First, Mr. Posey maintains

that he was denied due process because his requested witnesses were not permitted to testify at his

disciplinary hearing; they instead submitted written statements. Second, Mr. Posey argues that he

was denied the video evidence he requested. For the reasons explained below, the Court concludes

that Mr. Posey was denied due process and his petition for habeas corpus is **granted**.

**I.  Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,*

381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v.*

*Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement

is satisfied with the issuance of advance written notice of the charges, a limited opportunity to

present evidence to an impartial decision maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton,* 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson,* 224 F.3d 649, 652 (7th Cir. 2000).

## II.  The Disciplinary Proceeding

On April 6, 2016, Sergeant Clayborn issued a Report of Conduct charging Mr. Posey with possession of a dangerous or deadly weapon in violation of Code A-106. The Report of Conduct states:

> On the above date and approximate time I, Sgt E. Clayborn, was conducting a routine shakedown of offender Sean Posey #979826, when I discovered a piece of sharpened metal approximately six and a half inches long with a strip of bed sheet wrapped around it magnetically affixed to the metal drawer on his bunk. Offender Posey was advised he'd be receiving a conduct report.

Dkt. 9-1.

Mr. Posey was notified of the charge on April 8, 2016, when he was served with the Report of Conduct and the Notice of Disciplinary Hearing. The Screening Officer noted that Posey requested three offender witnesses and the video showing the search. The three witness statements were collected. Offender James Anderson submitted a statement that states, "I know nothing." Dkt. 9-3. Offender Bobby Joe Sample, Jr. stated, "know nothing about it." Dkt. 9-4. The third offender, Angelo D'Paffo stated, "I know he didn't have a shank on him." Dkt. 9-5. A summary of the video was prepared and states, "The video for the above case was reviewed from 07:20 to 8:00 as the offender requested. Video [d]oes not show this bed area during this time frame. Camera does not record sound." Dkt. 9-6.

The Hearing Officer conducted a disciplinary hearing on April 13, 2016. The Hearing

Officer noted Mr. Posey's statement, "I don't know if it was there when I moved in to that bed or if someone put it there. That was not mine. I don't know who put it there. I don't need anything like that." Dkt. 9-8. The Hearing Officer determined that Mr. Posey had violated Code A-106 for possessing a dangerous weapon. The sanctions imposed included a restriction of phone and commissary privileges, 6 months of disciplinary segregation, the deprivation of 180 days of earned credit time, and the demotion from credit class II to credit class III.

The Hearing Officer imposed the sanctions because of the seriousness, frequency, and nature of the offense, and the degree to which the violation disrupted or endangered the security of the facility.

Mr. Posey filed an appeal to the Facility Head on April 13, 2016. The appeal was denied on April 25, 2016. Mr. Posey then appealed to the Final Review Authority, who denied the appeal on June 20, 2016.

### III. Analysis

#### A. Witness Testimony

"Inmates have a due process right to call witnesses at their disciplinary hearings when doing so would be consistent with institutional safety and correctional goals." *Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003) (*citing Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)). However, "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary." *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002).

Mr. Posey argues that he was erroneously denied live testimony of the witnesses he requested. At screening, Mr. Posey requested testimony from three offender witnesses. It appears that the offender witnesses responded to the following instruction on State Form 35447:

> You have been requested by the above-named offender [Mr. Posey] to appear as a witness and testify as to your knowledge of the above-named alleged

> violation of the Appropriate Disciplinary Code [possession of dangerous weapon]. If you do not appear, you must give a written statement as to your knowledge of this alleged offense."

Dkt. 9-5. Two of the offenders stated that they did not know anything and Offender Angelo D'Paffo stated, "I know he didn't have a shank on him." Dkt. 9-5.

Based on the record before the Court, Offender Angelo should have been permitted to provide live testimony. The Seventh Circuit has repeatedly rejected the argument that written witness statements are an adequate substitute for live testimony. *See Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998) ("We are . . . unconvinced by the prison's assertion that its policy of interviewing requested witnesses and summarizing their testimony in an unsworn report is a legitimate means of 'calling a witness' even when live testimony would be feasible."); *see also Doan v. Buss*, 82 Fed. Appx. 168, 170-71 (7th Cir. 2003) (rejecting the contention that "under *Wolff* oral testimony is not required as long as written statements are obtained"); *Ashby v. Davis*, 82 Fed. Appx. 467, 471 (7th Cir. 2003) (holding that "[t]he submission of a written [witness] statement is not by itself a valid reason for not appearing," and explaining that "[l]ive testimony is the presumption absent a valid reason for proceeding differently").

The respondent argues that there was no due process violation to allow written statements and not live testimony in this case because none of these statements aided Posey's defense in any way because none of them shed any light on whether the weapon under Posey's bed was in his constructive possession. *See Piggie*, 344 F.3d at 679 (upholding denial of prisoner's claim that he was denied the right to call witness at disciplinary hearing where inmates affidavit did not specify what witness' testimony might have been or how it would have aided defense).

It is true that Mr. Posey is not entitled to have witnesses appear that state they know nothing about the alleged disciplinary offense. But, Offender D'Paffo testified that he knew Mr. Posey did

not have a shank on him, not that he did not know anything about the offense. The respondent argues that this statement does not relate to constructive possession, but it is not clear from the form that this is the question being asked or responded to. Given the description of the offense described on the form, Offender D'Paffo provided an appropriate response. Further, the rationale given for why Offender D'Paffo did not appear at the hearing was that the testimony would result in irrelevant or repetitive testimony. Dkt. 9-5. This explanation is insufficient in light of the fact that Mr. Posey asserts that D'Paffo would have testified that he lived in the immediate area of Mr. Posey and witnessed the comings and goings at Mr. Posey's bunk on a regular basis.

The respondent also argues that permitting live testimony from other inmates would have threatened the safety and security of the facility. This argument is not persuasive. While safety concerns are a valid justification for denying an inmate the ability to present live witnesses, *see Wolff*, 418 U.S. at 566, a conclusory assertion that security concerns were present is insufficient to foreclose judicial review of whether the petitioner's due process rights were infringed, *see Ponte v. Real*, 471 U.S. 491, 498-99 (1985); *see also Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977) ("If we were to allow broad unsupported findings as were offered in the present case to support the [exclusion of the prisoner's witnesses], a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless."). Therefore, it was the respondent's burden to provide a "justification"—not a conclusion—for the denial of witnesses. *Ponte*, 471 U.S. at 499; *see Wilson v. Davis*, 102 Fed. Appx. 37, 38 (7th Cir. 2004) ("The burden is on the state to offer a rational explanation for the denial of an inmate's request for witnesses."). The justification must be sufficiently particularized to represent "a determination . . . made on a case-by-case basis that requested witnesses pose institutional problems." *Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992); *see Hayes*, 555 F.2d at 630 (rejecting a prison's justification for excluding witnesses because it was "only broad conclusory findings of possible hazard both to potential

5

witnesses and to institutional security which applied to all of the proposed witnesses on plaintiff's list"). The respondent's explanation is insufficient in this regard.

Under these circumstances, Mr. Posey has established that his due process rights were violated when he was denied the live testimony of Offender D'Paffo as a witness.

### B. Video Evidence

Mr. Posey challenges the denial of production of the video he requested at screening. He specifically sought video recorded on April 6, 2016 between 7:30 a.m. and 7:50 a.m. to show that the weapon was found in a common area around his bunk, J4-117. He argues that he was denied due process because he was unable to view the video evidence and utilize it in his defense. Instead a form titled "report of disciplinary hearing video evidence review" was included in the record which stated that the disciplinary hearing board determined that allowing the offender to view the video recorded evidence would jeopardize the safety and/or security of the facility and that the video does not show the J-Unit Pod 4, Bed 117 during the applicable time frame.

Mr. Posey disputes this conclusion. Instead, he argues that he is familiar with the area being recorded such that there should not have been security concerns prohibiting his ability to see video of his cell. Mr. Posey further argues that he specifically requested review of the camera that captured his bed area and that instead the video from the camera with a view obstructed by a dividing wall was erroneously reviewed.

"[P]rocedural due process require[s] prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). "But prison authorities who assert a security justification for nondisclosure [of video evidence] still have the burden of proving that their denial of requested evidence was not 'arbitrary or capricious.'" *Johnson v.*

*Brown*, 681 Fed. Appx. 494, 496 (7th Cir. 2017) (*quoting Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002)). In addition, "even when prison administrators have a valid justification for withholding video evidence, 'due process requires that the district court conduct an in camera review' to assess whether the undisclosed video is exculpatory." *Id.* (*quoting Piggie v. Cotton*, 344 F.3d 674, 679 (7th Cir. 2003)). That did not happen here. The video at issue was not produced for *in camera* review and there is no response to Mr. Posey's argument that the wrong camera was reviewed.

Mr. Posey's theory is that if the requested video had been reviewed it would have shown that although the weapon was found on the underside of the drawer attached to the bed Mr. Posey slept in, the drawer was actually in a common area. The record does not sufficiently detail the layout of Mr. Posey's cell and housing unit to conclude whether or not the drawer under his bed could be considered accessible in a common area. If the video of Mr. Posey's cell reflects that his bed area is treated like a common area then this evidence would be exculpatory. Given the evidence in the record, this Court cannot find that the denial of the requested video evidence was not prejudicial and the respondent's arguments to the contrary are rejected. Relief is warranted on this basis.

## IV.  Conclusion

For the reasons explained above, Mr. Posey's petition for a writ of habeas corpus is **granted**.  The disciplinary sanctions imposed as a result of prison disciplinary proceeding NCF 16-04-0050 are **vacated**, meaning his lost good-time credits and demotion of credit class must be **immediately restored**, and his new release date must be calculated accordingly.

Final judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**


Date:  9/1/17

_William T Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Distribution:

Marjorie H. Lawyer-Smith
INDIANA ATTORNEY GENERAL
marjorie.lawyer-smith@atg.in.gov

SEAN E. POSEY
979826
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
NEW CASTLE, IN 47362